**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MOTEL NAVIGATION LTD., EAGLE TRANSPORTATION LTD., SEVERO COMPANY LTD., SERENITY NAVIGATION LTD., WAVE SHIPPING LTD., and RONTOR LTD., | : | |
| Plaintiffs, | : | C.A. No.: ____________ |
| v. | : | |
| PDVSA PETROLEOS S.A., | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT

Plaintiffs Motel Navigation Ltd. ("Motel"), Eagle Transportation Ltd. ("Eagle"), Severo Company Ltd. ("Severo"), Serenity Navigation Ltd. ("Serenity"), Wave Shipping Ltd. ("Wave"), and Rontor Ltd. ("Rontor") (collectively, "Plaintiffs"), as and for their Verified Complaint against Defendant PDVSA Petroleos S.A. ("Defendant" or "PDVSA") allege upon information and belief as follows:

### Jurisdiction and Venue

1. This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Defendant cannot be found within this District within the meaning of Supplemental Admiralty Rule B.

3. Venue is properly situated in this District because Defendant's property is, or soon will be, in the possession, custody, and control of Garnishees within this District.

**The Parties**

4. Motel was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in London, England. At all times relevant to this action, Motel was the Disponent owner of the M/T ICE FIGHTER.

5. Eagle was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in London, England. At all times relevant to this action, Eagle was the disponent owner of the M/T ICE ENERGY.

6. Severo was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in London, England. At all times relevant to this action, Severo was the disponent owner of the M/T ICE VICTORY.

7. Serenity was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in London, England. At all times relevant to this action, Serenity was the disponent owner of the M/T FELICITY.

8. Wave was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in London, England. At all times relevant to this action, Wave was the disponent owner of the M/T POLYMNIA I.

9. Rontor was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in Monrovia, Liberia. At all times relevant to this action, Rontor was the owner of the M/T BOSTON.

10. At all times relevant to this action, Defendant PDVSA was and still is a foreign business entity organized and existing under the laws of Venezuela and had its principal place of business in Caracas, Venezuela.

11. At all times relevant to this action, non-party Dynacom Tankers Management, Ltd. ("Dynacom") acted as the commercial operator of the M/T ICE FIGHTER, M/T ICE ENERGY, M/T ICE VICTORY, M/T FELICITY, M/T POLYMNIA I, and M/T BOSTON (collectively, the "Vessels").

**Count I: The *Ice Fighter* Charter Party.**

12. On August 14, 2015, Motel, as owner, and PDVSA, as charterers, entered into a maritime contract of charter party for use of the M/T ICE FIGHTER (the "*Ice Fighter* Charter Party").

13. Pursuant to its charter with Plaintiff Motel, Defendant PDVSA was obligated to pay charter hire every month in advance at the rate of $26,450 per day pro rata for the duration of the charter period.

14. Motel duly delivered the M/T ICE FIGHTER into the service of Charterer, and duly performed all of its obligations under the charter.

15. Despite Charterer's obligation to pay charter hire under the charter, Defendant PDVSA is in arrears for charter hire and other sums due under the charter terms in the amount of $839,749.91.

16. Despite due demand by Plaintiff Motel, and the acknowledgement by Defendant that the above sum is due and owing, PDVSA has failed to pay the outstanding hire and other sums due and owing to Motel.

17. The M/T ICE FIGHTER has been redelivered by PDVSA to Motel.

18. The charter party provides for the application of U.S. law and disputes between the parties to be resolved by arbitration in New York.

19. On November 28, 2016, Motel issued a Demand for Arbitration to PDVSA to recover the outstanding amounts due and owing under the *Ice Fighter* Charter Party.

20. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for Plaintiff Motel's claims which have or will soon be made in the New York arbitration under U.S. law as agreed by the parties.

21. As a regular feature of New York arbitration, attorney fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

22. Plaintiff Motel estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in arbitration will be $100,000.00. Interest anticipated to be awarded is estimated to be $28,269.74 (calculated at the rate of 3% per annum compounded quarterly for a period of 1 year, the estimated time for completion of the arbitration proceedings).

23. In all, the claim for which Plaintiff Motel sues in this action, as near as presently may be estimated, totals $968,019.65, no part of which has been paid by Defendant PDVSA, despite due demand. Plaintiff Motel specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Motel.

**Count II: The *Ice Energy* Charter Party**

24. On August 14, 2015, Eagle, as owners, and PDVSA, as charterers, entered into a charter party for the M/T ICE ENERGY (the "*Ice Energy* Charter Party").

25. Pursuant to its charter with Plaintiff Eagle, Defendant PDVSA was obligated to pay charter hire every month in advance at the rate of $26,450 per day pro rata for the duration of the charter period.

26. Eagle duly delivered the M/T ICE ENERGY into the service of Charterer, and duly performed all of its obligations under the charter.

27. Despite Charterer's obligation to pay charter hire under the charter, Defendant PDVSA is in arrears for charter hire and other sums due under the charter terms in the amount of $4,428,419.39.

28. Despite due demand by Plaintiff Eagle, and the acknowledgement by Defendant that the above sum is due and owing, PDVSA has failed to pay the outstanding hire and other sums due and owing to Eagle.

29. The *Ice Energy* Charter Party remains in effect at the rate of $26,450 per day pro rata for a period of an additional 9 months and 10 days (total 282 days). As such, future hire which will become due and payable until completion of the charter will total $7,458,900.00.

30. The charter party provides for the application of U.S. law and disputes between the parties to be resolved by arbitration in New York.

31. On November 23, 2016, Eagle issued a Demand for Arbitration to PDVSA to recover the outstanding amounts due and owing under the *Ice Energy* Charter Party.

32. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for Plaintiff Eagle's claims which have or will soon be made in the New York arbitration under U.S. law as agreed by the parties.

33. As a regular feature of New York arbitration, attorney fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

34. Plaintiff Eagle estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in arbitration will be $100,000.00. Interest anticipated to be awarded is estimated to be $136,224.78 (calculated at the rate of 3% per annum compounded quarterly for a period of 1 year, the estimated time for completion of the arbitration proceedings).

35. In all, the claim for which Plaintiff Eagle sues in this action, as near as presently may be estimated, totals $4,664,644.17 no part of which has been paid by Defendant PDVSA, despite due demand.

36. Plaintiff Eagle specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Eagle in the event of continuing breach by PDVSA.

**Count III: The *Ice Victory* Charter Party**

37. On August 14, 2015, Severo, as owners, and PDVSA, as charterers, entered into a charter party for the M/T ICE VICTORY (the "*Ice Victory* Charter Party").

38. Pursuant to its charter with Plaintiff Severo, Defendant PDVSA was obligated to pay charter hire every month in advance at the rate of $26,450 per day pro rata for the duration of the charter period.

39. Eagle duly delivered the M/T ICE VICTORY into the service of Charterer, and duly performed all of its obligations under the charter.

40. Despite Charterer's obligation to pay charter hire under the charter, Defendant PDVSA is in arrears for charter hire and other sums due under the charter terms in the amount of $3,894,066.66.

41. Despite due demand by Plaintiff Severo, and the acknowledgement by Defendant that the above sum is due and owing, PDVSA has failed to pay the outstanding hire and other sums due and owing to Severo.

42. The *Ice Victory* Charter Party remains in effect at the rate of $26,450 per day pro rata for a period of an additional 8 months and 28 days (total 270 days). As such, future hire which will become due and payable until completion of the charter will total $7,141,500.00.

43. The charter party provides for the application of U.S. law and disputes between the parties to be resolved by arbitration in New York.

44. On November 23, 2016, Severo issued a Demand for Arbitration to PDVSA to recover the outstanding amounts due and owing under the *Ice Victory* Charter Party.

45. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for Plaintiff Severo's claims which have or will soon be made in the New York arbitration under U.S. law as agreed by the parties.

46. As a regular feature of New York arbitration, attorney fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

47. Plaintiff Severo estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in arbitration will be $100,000.00. Interest anticipated to be awarded is estimated to be $120,150.28 (calculated at the rate of 3% per annum

compounded quarterly for a period of 1 year, the estimated time for completion of the arbitration proceedings).

48. In all, the claim for which Plaintiff Severo sues in this action, as near as presently may be estimated, totals $4,114,216.94, no part of which has been paid by Defendant PDVSA, despite due demand. Plaintiff Severo specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Severo in the event of continuing breach by PDVSA.

**Count IV: The *Felicity* New York Charter Party**

49. On August 14, 2015, Serenity, as owners, and PDVSA, as charterers, entered into a charter party for the M/T FELICITY (the "*Felicity* New York Charter Party").

50. On March 5, 2016 at 2100 hours FELICITY was substituted for ICE ENERGY.

51. On June 3, 2016 FELICITY was substituted for ICE VICTORY.

52. On August 14, 2016 FELICITY was substituted for ICE FIGHTER.

53. Pursuant to its charter with Plaintiff Serenity, Defendant PDVSA was obligated to pay charter hire every month in advance at the rate of $26,450 per day pro rata for the duration of the charter period.

54. Serenity duly delivered the M/T FELICITY into the service of Charterer, and duly performed all of its obligations under the charter.

55. Despite Charterer's obligation to pay charter hire under the charter, Defendant PDVSA is in arrears for charter hire and other sums due under the charter terms in the amount of $3,345,037.86.

56. Despite due demand by Plaintiff Serenity, and the acknowledgement by Defendant that the above sum is due and owing, PDVSA has failed to pay the outstanding hire and other sums due and owing to Serenity.

57. The *Felicity* New York Charter Party remains in effect at the rate of $18,800 per day pro rata for a period of an additional 9 months and 10 days (total 282 days). As such, future hire which will become due and payable until completion of the charter will total $7,458,900.00.

58. The charter party provides for the application of U.S. law and disputes between the parties to be resolved by arbitration in New York.

59. On November 25, 2016, Serenity issued a Demand for Arbitration to PDVSA to recover the outstanding amounts due and owing under the *Felicity* Charter Party.

60. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for Plaintiff Serenity's claims which have or will soon be made in the New York arbitration under U.S. law as agreed by the parties.

61. As a regular feature of New York arbitration, attorney fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

62. Plaintiff Serenity estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in arbitration will be $100,000.00. Interest anticipated to be awarded is estimated to be $100,626.07 (calculated at the rate of 3% per annum compounded quarterly for a period of 1 year, the estimated time for completion of the arbitration proceedings).

63. In all, the claim for which Plaintiff Serenity sues in this action, as near as presently may be estimated, totals $3,545,663.93, no part of which has been paid by Defendant PDVSA, despite due demand. Plaintiff Serenity specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Serenity in the event of continuing breach by PDVSA.

**Count V: The *Polymnia I* Charter Party**

64. On August 14, 2015, Wave, as owners, and PDVSA, as charterers, entered into a charter party for the M/T POLYMNIA I (the "*Polymnia I* Charter Party").

65. Pursuant to its charter with Plaintiff Wave, Defendant PDVSA was obligated to pay charter hire every month in advance at the rate of $26,550 per day pro rata for the duration of the charter period.

66. Wave duly delivered the M/T POLYMNIA I into the service of Charterer, and duly performed all of its obligations under the charter.

67. Despite Charterer's obligation to pay charter hire under the charter, Defendant PDVSA is in arrears for charter hire and other sums due under the charter terms in the amount of $584,509.44.

68. Despite due demand by Plaintiff Wave, and the acknowledgement by Defendant that the above sum is due and owing, PDVSA has failed to pay the outstanding hire and other sums due and owing to Wave.

69. The M/T POLYMNIA I has been redelivered by PDVSA to Wave.

70. The charter party provides for the application of U.S. law and disputes between the parties to be resolved by arbitration in New York.

71. On November 29, 2016, Wave issued a Demand for Arbitration to PDVSA to recover the outstanding amounts due and owing under the *Polymnia I* Charter Party.

72. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for Plaintiff Wave's claims which have or will soon be made in the New York arbitration under U.S. law as agreed by the parties.

73. As a regular feature of New York arbitration, attorney fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

74. Plaintiff Wave estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in arbitration will be $100,000.00. Interest anticipated to be awarded is estimated to be $20,591.54 (calculated at the rate of 3% per annum compounded quarterly for a period of 1 year, the estimated time for completion of the arbitration proceedings).

75. In all, the claim for which Plaintiff Wave sues in this action, as near as presently may be estimated, totals $705,100.98, no part of which has been paid by Defendant PDVSA, despite due demand. Plaintiff Wave specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Wave.

**Count VI: The *Felicity* London Charter Party**

76. On January 22, 2014, Serenity, as owners, and PDVSA, as charterers, entered into a charter party for the M/T FELICITY (the "*Felicity* London Charter Party).

77. Pursuant to its charter with Plaintiff Serenity, Defendant PDVSA was obligated to pay charter hire every month in advance. For the period January 28, 2014 to April 30, 2014 the daily hire rate was $16,000 per day. For the period May 1, 2014 to March 5, 2016 the daily hire rate was $18,800.00 per day pro rata.

78. Serenity duly delivered the M/T FELICITY into the service of Charterer, and duly performed all of its obligations under the charter.

79. Despite Charterer's obligation to pay charter hire under the charter, Defendant PDVSA is in arrears for charter hire and other sums due under the charter terms in the amount of $386,207.11.

80. Despite due demand by Plaintiff Serenity, and the acknowledgement by Defendant that the above sum is due and owing, PDVSA has failed to pay the outstanding hire and other sums due and owing to Serenity.

81. The M/T FELICITY has been redelivered to Serenity by PDVSA under the *Felicity* London Charter Party.

82. The charter party provides for the application of English law and disputes between the parties to be resolved by arbitration in London.

83. On November 29, 2016, Serenity issued a Demand for Arbitration to PDVSA to recover the outstanding amounts due and owing under the *Felicity* London Charter Party.

84. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for Plaintiff Serenity's claims which have or will soon be made in the London arbitration under English law as agreed by the parties.

85. As a regular feature of London arbitration, attorney fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

86. Plaintiff Serenity estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in arbitration will be $100,000.00. Interest anticipated to be awarded is estimated to be $14,626.18 (calculated at the rate of 3% per annum compounded quarterly for a period of 1 year, the estimated time for completion of the arbitration proceedings).

87. In all, the claim for which Plaintiff Serenity sues in this action, as near as presently may be estimated, totals $500,833.29, no part of which has been paid by Defendant PDVSA, despite due demand. Plaintiff Serenity specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Serenity.

**Count VII: The *Boston* Charter Party**

88. On October 22, 2014, Rontor, as owners, and PDVSA, as charterers, entered into a voyage charter party for the M/T BOSTON on an amended Asbatankvoy form (the "*Boston* Charter Party").

89. Pursuant to its charter with Plaintiff Rontor, Defendant PDVSA was obligated to pay freight on the cargo carried as well as demurrage at the rate of $40,000.00 per day for any time used in excess of the laytime allowed under the charter.

90. Rontor duly delivered the M/T BOSTON into the service of Charterer, and duly performed all of its obligations under the charter.

91. During the course of the charter 8.33125 days of demurrage was incurred.

92. Rontor duly invoiced PDVSA on December 19, 2014 the sum of $333,250.00 representing the undisputed demurrage charges due under the charter.

93. Despite Charterer's obligation to pay demurrage under the charter, PDVSA has failed and otherwise refused to pay the $324,627.68 due and owing to Rontor.

94. The charter party provides for the application of English law and disputes between the parties to be resolved by arbitration in London.

95. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for Plaintiff Rontor's claims which have or will soon be made in the London arbitration under English law as agreed by the parties.

96. On November 29, 2016, Rontor issued a Demand for Arbitration to PDVSA to recover the outstanding demurrage due and owing under the *Boston* Charter Party.

97. As a regular feature of London arbitration, attorney fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim and the amount sued for herein.

98. Plaintiff Rontor estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in arbitration will be $100,000.00. Interest anticipated to be awarded is estimated to be $12,773.73 (calculated at the rate of 3% per annum compounded quarterly for a period of 1 year, the estimated time for completion of the arbitration proceedings).

99. In all, the claim for which Plaintiff Rontor sues in this action, as near as presently may be estimated, totals $437,401.41, no part of which has been paid by Defendant PDVSA, despite due demand. Plaintiff Rontor specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Rontor.

**<u>Request for Maritime Attachment and Garnishment under Rule B</u>**

100. Plaintiffs seek issuance of Process of Maritime Attachment and Garnishment so that they may obtain security for their claims against PDVSA, which has not paid or provided security in response to Plaintiffs' multiple and continued demands.

101. PDVSA cannot be found within this district within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of Garnishees in this District.

102. Plaintiffs' principal claims currently totals **USD $ 14,935,880.37**. Plaintiffs specifically reserve the right to amend this amount to include sums that may become due and owing to Plaintiffs in the event of cancellation of the *Ice Energy* Charter Party, and/or the *Ice Victory* Charter Party, and/or the *Felicity* Charter Party.

WHEREFORE, Plaintiffs pray:

a. That process in due form of law according to the practice of this Court may issue against Defendant, citing it to appear and answer the foregoing, failing which default may be taken;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$14,935,880.37** be restrained and attached, including, but not limited to any cargo, cash, funds, escrow funds, credits, debts, transfers, accounts and/or letters of credit, of, belonging to, due or for the benefit of Defendant in the hands of certain garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That if any cargo, cash, funds, escrow funds, credits, debts, transfers, accounts and/or letters of credit, of, belonging to, due or for the benefit of Defendant in the hands of certain garnishes who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein be attached within the meaning of Supplemental Rule B, such amounts be segregated to apply to the individual claims of Plaintiffs as follows:

   i. $968,019.65 for Motel's claim under the *Ice Fighter* Charter Party;
   ii. $4,664,644.17 for Eagle's claim under the *Ice Energy* Charter Party;
   iii. $4,114,216.94 for Severo's claim under the *Ice Victory* Charter Party;
   iv. $3,545,663.93 for Serenity's claim under the *Felicity* New York Charter Party;
   v. $705,100.98 for Wave's claim under the *Polymnia I* Charter Party;
   vi. $500,833.29 for Serenity's claim under the *Felicity* London Charter Party;
   vii. $437,401.41 for Rontor's claim under the *Boston* Charter Party;

d. That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of Process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to FED. R. CIV. P. 4(c) to serve Process of Maritime Attachment and Garnishment in this action;

e. That upon attachment of the amount demanded, this Court retain jurisdiction over the matter through the entry of judgment of the pending claims including any

appeals thereof, and for any further or supplemental proceedings as may be necessary; and

f. For such other, further and different relief as this Court may deem just and proper, including but not limited to a default with respect to any property seized in the event a timely response is not filed.

**COLE SCHOTZ P.C.**

Michael F. Bonkowski (No. 2219)
Nicholas J. Brannick (No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
(302) 651-2002 (Phone)
(302) 574-2102 (Fax)
mbonkowski@coleschotz.com
nbrannick@coleschotz.com

*Counsel for Plaintiffs, Motel Navigation Ltd., Eagle Transportation Ltd., Severo Company Ltd., Serenity Navigation Ltd., Wave Shipping Ltd., and Rontor Ltd.*

OF COUNSEL:
Michael E. Unger
Jan P. Gisholt
Michael J. Dehart
Freehill Hogan & Mahar LLP
80 Pine Street, 25th Floor
New York, NY 10005
Tel: (212) 425-1900
Fax: (212) 425-1901
unger@freehill.com
dehart@freehill.com

Dated: December 8, 2016